"The underlying case in this court involves the petition of Mancon Liquidating Corporation to redetermine excessive profits under the Renegotiation Act, 50 App. U.S.C. § 1211 ff., for its fiscal year ended July 31, 1967. That case has not yet been tried on its merits, and our present concern is not with the merits but with questions of who shall be liable if Mancon — which the Government calls a worthless shell — is found to have made excessive profits. In February 1977 the trial judge allowed the defendant’s *1040 motion that third-parties International Controls Corporation (ICC) and Intercontinental Manufacturing Company, Inc. (IMCO-DC) be served with notices to appear and assert any claim or interest they might have in the Mancon proceedings; the Government asserts that ICC and IMCODC have such an interest because, it is said, they assumed Mancon’s renegotiation liability in connection with their acquisition of assets and liabilities of Mancon. The Government had taken the same position in a civil action it brought, in December 1976, against ICC and IMCO-DC in the Northern District of Texas to make those entities liable for any renegotiation liability found against Mancon. United States v. International Controls Corp., et al., C.A. No. 3-76-1653-F, N.D. Tex.
"IMCO-DC and ICC then moved to stay the proceedings in this court (except as to discovery between Mancon and the Government) until the Texas District Court had resolved the issue of movants’ liability. They asserted that unless that was done they would be compelled to participate on the merits in this court (Mancon being reportedly insolvent and without incentive to protect its own interest) even though it might very well turn out that they were not liable, as transferees or otherwise, for any of Mancon’s excessive profits. The Government agrees that the liability of ICC and IMCO-DC should be determined before the merits of the renegotiation claim is gone into.
"The trial judge denied the motion of ICC and IMCO-DC. He thought that 'on the limited facts now available to this court it is plausible to identify both ICC and IMCO-DC, not as parties upon whom liability might devolve by operation of law (i.e., as transferees), but as the real parties in interest in this suit. The latter situation may exist by virtue of a constructive novation pursuant to which ICC and/or IMCO-DC were joined with or substituted as the "contractor” on Mancon’s contracts with the Government.’ The trial judge also said: 'Since this court clearly has jurisdiction to determine whether, as a matter of contract law, the present action has been brought by the real party in interest, the granting of a request for stay would be inappropriate.’
*1041 "ICC and IMCO-DC have sought review of this denial of their motion to stay. The trial judge has certified the matter under Rule 53(c)(2)(i), and we have heard oral argument.
"Before us the parties have disputed (a) the jurisdiction of this court to consider and decide all or any of the grounds upon which ICC and IMCO-DC might be liable for Mancon’s renegotiation debt (if any), and (b) whether ICC and IMCO-DC are so liable as a matter of fact and law. We by-pass those issues entirely, without intimating any opinion on them, because we are satisfied that as a matter of comity this court ought to wait for the determination in the Northern District of Texas. Our underlying premise, which we share with the participants in this request for review, is that the liability of ICC and IMCO-DC should be decided before this court considers the merits of the issue of excessive profits.
"The first and most important reason for waiting for the Texas tribunal is that there is very little doubt that that District Court has jurisdiction to decide the issues involving the liability of ICC and IMCO-DC for excessive profits found to be due in the suit in this court.[1] The jurisdiction of this court over those problems, on the other hand, is strongly contested by ICC and IMCO-DC and raises at least a substantial question. It is preferable in that situation to have the issues decided in the court with the clearest claim and least doubt as to jurisdiction. Cf. Georgia-Pacific Corp. v. United States, ante, at 361-64.
"A second reason for waiting for the District Court is that, for litigation purposes, the problems relating to the potential liability of ICC and IMCO-DC first arose when the Texas suit was commenced by the Government in December 1976. It was not until a month or two later that the Government moved in this court for third-party notices to ICC and IMCO-DC. It is true that the renegotiation suit itself had been begun several years before, but the effort to obtain a judicial determination of the potential liability of *1042 ICC and IMCO-DC did not begin until December 1976 and it first came in the Northern District of Texas.
"Third, we have, at this stage, no good reason to believe that the determination of the matter in the Northern District of Texas will be unduly delayed. From what we know now, that court’s ruling could come as swiftly as a comparable decision by this court. If it should turn out that there is undue delay, this order will not preclude any party from asking the court to lift the suspension and to authorize proceedings in this court to commence again.
"it is therefore ordered and concluded that the request for review by ICC and IMCO-DC is granted, the trial judge’s order is vacated insofar as it denied the stay of proceedings requested by ICC and IMCO-DC, and further proceedings in this court are stayed (except for discovery between Mancon and the Government) until the decision in United States v. International Controls Corp., et al., C.A. No. 3-76-1653-F, N.D. Tex., supra.”

 At the oral argument, Government counsel sought to question the jurisdiction of the District Court but we are not at all persuaded that the Government was wrong when it brought its suit in Texas and thus asserted that that court had full jurisdiction.